Good morning, your honor. With the court's permission, Sarah Bonner is one of the federal defendants appearing on behalf of Miguel Salazar under Local Rule 46.1e. Mr. Salazar wants to work and his conditions of release require him to. That's because getting a job is often a critical part of successfully reentering society. In the first appeal in this case, this court vacated a condition that would, quote, severely hamper Mr. Salazar's ability to engage in activities important to reentry, such as applying for jobs. The same is true of the condition here. Special condition number nine unreasonably burdens Mr. Salazar's ability to get a job by prohibiting him from using any internet capable electronic device that's unmonitored by regardless of the circumstances. This court should modify the condition to specify that Mr. Salazar may use an employer's electronic devices at work for work purposes, provided he reports that use to probation. Now, that decision would be without prejudice to probation's ability. The court was concerned with that arrangement because it felt there would be no control over what Mr. Salazar was doing with that computer, even though it was in a work context. So how do you address that concern? So I think it's clear that the court was applying the wrong standard. The standard is not eliminating all possible risk. It's instead whether this condition is reasonably necessary to protect the public because there's a realistic danger of this happening while Mr. Salazar is at work. And I think there are a number of reasons why there is no such realistic danger here. First, I'll point out Mr. Salazar's individual characteristics. He's a young, first-time offender who, upon being caught, immediately confessed, repeatedly expressed remorse, and cooperated fully with authorities, something that this court noted as relevant in the first Salazar opinion. I'd also point out that in the government's sentencing submission, they note that Mr. Salazar possessed a relatively low number of videos and images compared to other similarly situated defendants. And in the roughly four years since this case began, there has been no indication that Mr. Salazar has ever, even a single time, attempted to view these materials again. What job was this request for? Was that specified, or was this just a general modification request? No, this was for an entry-level position at a food pantry. Mr. Salazar detailed the specifics of this job in an April 4th letter, including the organization he would be working for, the nature of any computer use, that is, printing receipts, where the computer was located in the office, how many other people had access to that room. And so your argument is that it's an occupational restriction because it involves a computer like most jobs these days? Yes, this is an occupational restriction because it prohibits Mr. Salazar from using any unmonitored device at any time for any reason. That includes at work, and that clearly limits the terms. But there are jobs that don't require computers. The fact that there are some jobs without computers does not save this from being an occupational restriction. I'll point out that... We've said that it has to be a specific job or occupation. I don't think that's right, Your Honor. In this Court's employer notification cases, for example, this Court has repeatedly, including, I would say mostly on plain error of view, found that employer notification requirements amount to occupational restrictions. And those restrictions do not specify any job. It applies broadly to any employment involving the use of a computer. What about a drug testing condition? Would that interfere with the job? You have to show up for a random drug test. That seems like it would interfere with the schedule for most jobs. I think it's possible, but that there could be other potential occupational restrictions here. Because it sounds like you're saying that anything that is a limitation on a job counts as an occupational restriction, and that seems like far too broad an understanding of that. I think that the restriction here is far more severe than restrictions this Court has already found to be occupational restrictions. So in the employer notification cases, for example, this Court has repeatedly found, on plain error of view, that simply having to notify your employer of your past conviction amounts to an occupational restriction. But even in those cases, the individuals could... Don't you... I'm a little confused by that, because most employers need to know what the background is of any employee who's coming in. And the fact that he's been convicted would seem to be something that most employers would need to know, and that it would be wrongful, and it would be entitled to ask of any applicant and receive a truthful answer. Not necessarily what for, but the fact that they had been convicted of a crime. Well, I would point your honor to this Court's decisions in Jenkins, Piper, Ruff, Lombardi. Those cases clearly hold that that does amount to an occupational restriction. And likewise, saying this is even more restrictive, because even in those cases, the defendants could... So what we're saying is that in order to avoid that restriction, it's perfectly acceptable for the future employee to deny that they were ever involved in criminal activity, if asked. I don't think that's right, your honor. We are not... This... What the Court has found to be an occupational restriction is the Court's requirement that the individual affirmatively indicate to their employer the nature of the conviction. I don't think that has any bearing on an employer themselves asking... This condition went beyond simply telling the employer of his prior conviction, right? Under the condition, there would have to be this monitoring software put into the employer's system? Correct. Mr. Salazar is prohibited from using any electronic device with internet capabilities that does not have this software in it. I'll just... The software itself detects what? Suppose he'd been convicted of fraud using computers, and then later on wanted a job after being released from prison and has been hired, and the employee and the employer knows that this guy was convicted and that a computer was involved. Under those circumstances, a monitoring program to ensure that he doesn't engage in fraud again would be... Would not be a surprise to the employer. I mean, this isn't peculiar to child pornography. So I'll admit that I'm not exactly sure which keywords the monitoring program focuses on, but it is related to the nature of the offense, I believe. Well, that may be true, but the employer would not need to know what the particular monitoring was for just that there was monitoring. And then probation or whoever does the CIMP program would put in the appropriate software. Well, I'll note that not only does the condition require... Would the condition require Mr. Salazar to notify the employer to get the software installed on the computer, but the condition also specifies that Mr. Salazar has to notify every person who uses the computer that it's monitored. So this would include all other co-workers. Multiple other people had access to this computer at the food pantry job. And I think that's just going well beyond what this court has already held to be an unlawful occupational restriction. And I'd like to mention another reason why... I think that's a better argument that you're making. I mean, I'll ask the government, why do other employees need to have that information? I'd also like to point out that the occupational restriction test under this court's case law requires there to be a reasonably direct relationship between the offense conduct and Mr. Salazar's employment. And there's no relationship... Well, the district court said that it was concerned that he would engage in this conduct again, and it was concerned about him having access to a computer unsupervised and unmonitored for up to 40 hours a week. Isn't that pretty specific? When this court asks whether there's a reasonably direct relationship between the two things, the use of a computer to commit the offense is insufficient. I'll point the court to Ruff... For accessing and uploading child pornography. I mean, the district court talked about the specific offense and the need for this condition. But cases like Ruff and Lombardi make clear that there needs to be some sort of direct connection between the offense conduct and employment. And in the first appeal in this case, this court specifically noted... He's a child porn addict, and really can't... His psyche requires viewing child pornography, or at least it has, and he's trying to kick the habit, but he could fall back. It's like prohibition for alcoholics. This is kind of in the wrong direction. This is allowing him to have access to a computer for 40 hours a week. In the first appeal in this case, this court noted that there was no evidence Mr. Salazar had ever accessed these materials outside the confines of his home or attempted to conceal his use of these materials. And I'd also point the court to the government's sentencing submission. This is at docket entry 28 on page 2, which lists certain timestamps for the offense conduct here, which occurred exclusively between the hours of 1 and 2 a.m., again, indicating that this had absolutely nothing to do with Mr. Salazar's employment. And I think that alone dooms the restriction here, because cases like Doe and Lombardi make clear that both prongs of the occupational restriction test have to be met. I also just quickly want to note that there are any promises that this might change in the future are belied by the very record in this case. Mr. Salazar submitted a detailed letter listing all the specifics of this job, and the district court summarily denied that letter two weeks later without explanation. And more to the point, it's infeasible to require Mr. Salazar to provide all these kinds of details before he even has a job. I think it was fortuitous that he was able to in that April 4th letter. He was only able to because he was already interning at that location so he could provide that information. Thank you, counsel. You've reserved a few minutes to hear from the government. May it please the court. My name is Emily Dean. I'm an assistant United States attorney in the Eastern District of New York, and I represented the government in the district court. The district court properly denied Salazar's request for unfettered sweeping access to unmonitored internet-capable devices at a hypothetical place of employment. What about the April 4th application? First of all, did the government oppose that request? The government did not oppose that request. He got a job at this food bank, and according to the letter, there was one computer in the room, there were six people working in the room at any given time, and he would be using the computer to print labels. Is it likely that he would be able to look at porn while printing the labels? Well, Judge, your question goes directly to the reasonableness of the court's inquiry at the resentencing, which was the simple question about... Here was a specific circumstance with a specific request with the specific circumstances. The government didn't oppose it, and the district court denied it summarily without any discussion. But your honor, respectfully... Is that reasonable? Respectfully, yes, your honor, because the district court did give a reason. Is it likely that he would be searching the internet for porn while printing labels on a work computer in one room with six other people present at all times? I think that's possible due to the unique nature of this defendant. This is a defendant that the record reflects from his counsel, from his own sentencing submission, that he was struggling, ongoing struggle, with drug and alcohol addiction. That was one of the unique characteristics of this defendant that was cause for that concern. The court indicated that that showed the defendant was operating with very little control over his own actions. His own counsel had indicated that his daily use of drugs and alcohol for 10 years is what led to his possession, viewing, and uploading to public platforms of child sexual abuse material. So in light of those unique characteristics, yes, there was concern. But to just put a finer point on your honor's question and answering your question, the reason that the court's denial of that was reasonable is because when it denied the request, it harkened back to its concern at the resentencing, which was just to let the court know what the position of the screen was. The court tried to craft a very broad, non-restrictive condition with relation to employers because, of course, everyone wants Mr. Salazar to work. And the court said, for instance, you could come to this court and you could say you'll be in a room with this many people. He did go to the court and made the request and the court said no without any explanation. But your honor, there was an explanation. The explanation was in... Not when she denied this particular request. Yes, your honor. She said in the denial, in an unspecified... In the original at the resentencing, she said you can come and make an application. Yes. And he did. And then she denied that application without any discussion in a situation where it seems to me highly unlikely that he'd be able to access porn on that computer which is being used to print labels. If I may, your honor, the court did give an explanation in the denial. She said the denial was with request to use a computer in an unspecified location. And so that harkened back to her concern at the resentencing, which was just to get some information about the location of the screen in the room. As in, would Salazar have privacy even if other people were somewhere in the room or in and out? Or was the screen open for anyone who walked in to see? That's so simple, your honor, for that question to have been answered. In fact, Mr. Salazar could have simply replied to that denial answering the court's concern about... The letter also said that the computer would be used by other workers. The computer is used by workers, plural, to create and print receipts for people's food. Yes, your honor. It seems unlikely to me that he'd be able to access porn while working in that room with others all around. And I think, your honor, that court's concern was just the privacy of the computer. Why does the screen have to be private for the regular use of the computer for receipts, for printing receipts? Why does it have to be private, your honor? I think the preference would be that it not be private for this particular defendant's set of circumstance, is that the screen be viewable to other people who are in and out of the room. So is the problem that the computer is private, or is it the problem that he's likely, regardless of whether it's private or not, to view this material? I think that the court wanted to understand, your honor, what safeguards there would be in the workplace. And so if the screen, for instance, was not private, there's more reason to believe... What was the representation at the time when you made the motion? I thought that there was a statement about there being other people in the room. That was a follow-up letter, your honor. Yes, a follow-up letter about the specific type of... But if there are other people in the room who will have access to or can be viewing him having access to the computer, why isn't that... If that's permissible at the judge's mind, why isn't that... Doesn't that permit him to go forward without CIMP? Well, I think, your honor, in answer to your question, it's as simple as logistics. If I had a screen in front of me right now as I'm speaking to you and I was working on it, you wouldn't have any idea what I was doing on that screen. And if there were no one behind me... I'm on his side, but how do you know if there are other people working? He's going to just hope that nobody watches, nobody sees him when he's accessing the pornography? I think that's a possible concern, your honor, if there's privacy to the location of the screen. That concern is much lower. It might not be a concern at all if the screen is visible to other people. That's right. That's what I'm saying. So why is privacy necessary? I think for the district court, privacy is not necessary. The more people that could see the screen, the better for the district. And what about the government's position on that? The same, your honor. The more people that could see the screen, the more ability there is to monitor. And let me clarify something. It seems to me that this is a really minor difference here. I'm really not sure what the debate is all about. If, in fact, there are other people in the room and it's okay with the INP, if other people are in the room, then where are we, you know, what are we arguing about? So if I may, your honor, if I can go back to really what we're arguing about is did the court impose an occupational restriction, which this court did not. This court did not place any request, and specifically, your honors, Judge Chin, to your question, there was no requirement at the British Sentencing or otherwise that monitoring software be put onto an employer system for this defendant. In fact, there was... Well, the condition says the defendant shall not use any devices without approval until compatibility with current monitoring software hardware is determined and the installation of monitoring software hardware is completed. I mean, if he tries to get a job with Amazon, is Amazon going to agree to have the software installed on its system? I mean, it does, doesn't it become an occupational restriction in the sense that he can't work anywhere where he would have to use a computer? It doesn't, your honor, because the court was open and discussed at length that the resentencing ways... So how could he work at a place involving a computer unless the monitoring software were put into place first? The court gave two options at the resentencing. First, the court requested a written submission where counsel address counsel's idea of having probation monitor or take to the court any potential concerns about risk to that employer. Counsel declined to submit anything in writing to that effect. Second... Sorry, I didn't mean to interrupt. No, go ahead. Second, the court suggested exactly what Salazar could do, which was if there was a job such as that, make a proposal to probation or the court about how they could be monitored short of that software. So the court was very open to... And then he made that request and then it was denied without discussion? He made the request, but he did not inform the court something that was important to the court, which was whether he would have privacy in the screen. Even if people were in and out of the room, even if other people could use the computer. This was a defendant who used multiple different platforms. And as I sit here, I can see three computer screens from far away and I can tell that there isn't porn on any of those screens. And on your screen, we have 30 people in the audience who can see what's on your screen and they can tell that there isn't porn on your screen. And Your Honor, you hit the nail on the head because what's key to that observation is you know the positioning of the screens. That's all the district court wanted to know in this case. Did the district court say that? Yes, Your Honor, at the resentencing and in her decision denying his application, specifically said that, Your Honor, it's a reasonable request to help the court understand how she could monitor while imposing no occupational restriction. Your Honor, we request that the court... Is it necessary that there be a privacy for him to do this job or could you have a second screen that replicates what's on his computer that's very visible to everybody? Would that solve the problem? It could solve the problem. And that's what the court left open is a myriad of ways to solve this problem, short of any monitoring software, short of any employer notification, short of banning Mr. Salazar from doing any type of job. There was no occupational restriction. The court left it wide open for suggestions just like that, Your Honor. How much does the employer know about his criminal history? The employer under these parameters need not know anything, Your Honor. The court did not require that he reveal it. And in fact, there's so many cases in this circuit where this court has found that an occupational restriction is permissible. It was far more than what this court suggested or imposed. And thus, there's any other questions. For those reasons, we request this court affirm the district court's imposition of the computer monitoring provision. Thank you, counsel. We'll hear about it. I'd like to make just a few points. Apart from arguing that this is an occupational restriction, as a practical matter, isn't it possible for your client to make an offer, go back to the district judge and satisfy the judge that this is not going to be used to download because there'll be a second screen that people can see or that there are other employees around that will be able to view the The government and the court have not explained how Mr. Salazar could possibly have those details and furnish them to the court before he even has a job. And, you know, there's a lot of time pressure with things like job offers. These things evaporate. The district court took two weeks to summarily deny the request here. And the government suggests that... Was there an explanation? The government says there was an explanation as to the denial of this April 4th request. I disagree strongly. All that the order says is that his request to work in an unspecified position is denied. I think the government is reading far too much into the phrase unspecified position. The government's taking the position that that means the district court denied this because they didn't know exactly where in the office this computer was located. But Mr. Salazar provided that exact detail. He said it's in a common room where six other people have access and also use the computer. So the idea that the district court clearly was relying on where the computer was located as the basis for his denial, I think, is not supported. And again, I don't think it's reasonable, and it is a greater deprivation than necessary, to require Mr. Salazar to provide all those details to the court for every job offer he gets before he even has the offer. I'd also like to point out that Ruff and Lombardi were child pornography cases that involved the use of a computer. The court still found... I'm sorry. I'm still confused about whether what you're asking for is for the lifting of this for this job or just a blank. This condition cannot be imposed for any job, and you shouldn't have to be required to explain any of this. This condition is currently not narrowly tailored as it must be, and so that applies not only to this job opportunity that arose over a year ago. So we're not talking about this job at all, then? We're talking about any job involving a computer? I think, yes. I think this job shows, though, how this restriction operates and the district willingness to modify this. Mr. Salazar did exactly what the district court requested and what the government said that he should do. He provided these details, and it was lucky that he was able to because he was interning there. So would this condition be an occupational restriction for any job involving a computer? Is that your position? Yes. Prohibiting him flatly from using any unmonitored computer... That would essentially do away with this condition. I mean, that's an extraordinarily broad request you're making of us to strike down this condition. I disagree. I think the condition can be more narrowly tailored. And how could it be tailored? Based on things regarding location, the district court could mention things about private use of a computer behind closed doors that's unsupervised. The district court really made no attempt to like, details about the, you know, what we've been talking about, the positioning of the screen and the number of people in the room and things like that that are supposed to be worked out. But instead of working out those sorts of details, the district court has imposed a flat blanket on any position. And I think that that is unreasonable. A decision in our favor would be without prejudice with respect to probation's ability to seek a future modification based on the particulars of a specific job. Well, it also, another option here would be to send the case down, maybe on a Jacobson remand for complete reasoning by the district court as to why your motion, why your proposal, which assumes other people are available in the space, would not be, would not, would satisfy the requirement. And, you know, the district court didn't tell us. The district court just denied it. I don't think that's necessary because in cases like Ruff and Piper, this court did remand for further clarification. But those cases, the issue arose for the first time on appeal. There was a lengthy discussion about this on the record at resentencing. And then the subsequent letter and the summary denial. So I think it's clear what this restriction does. It prohibits him from using any device that's unmonitored in any job. But isn't it clear what the district court understood when she entered the order? And, or was it just one of those things where the district court just summarily denied without really focusing on the case? Well, I think that while I don't think argument is necessary, we wouldn't oppose that. I see that I'm over my time. And in closing, I'd just like to note that this offense occurred when Mr. Salazar was 19 and 20. He's now 25 after spending a 30-month incarceratory sentence. He's looking to put this behind him and to move on and really start his adult life in earnest. And this condition is too burdensome. It's already difficult to find a job with a felony sex conviction. This condition just pushes things too far. Thank you, counsel. Thank you both. We'll take the case under advisement.